**Edgar L. CUNNINGHAM, Appellant,**

v.

**UNITED STATES, Appellee.**

**Anthony L. CUNNINGHAM, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12417, 12452.**

District of Columbia Court of Appeals.

Argued June 28, 1978.

Decided Sept. 11, 1978.

Susan L. Moss, appointed by this court, for appellant Edgar L. Cunningham.

Frank J. Costello, Washington, D. C., appointed by this court, for appellant Anthony L. Cunningham.

John H. E. Bayly, Jr., Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Jeffrey T. Demerath and Michael W. Farrell, Asst. U. S. Attys., Washington, D. C., were on the brief, ⸬for appellee.

Before NEWMAN, Chief Judge, and KERN and YEAGLEY, Associate Judges.

PER CURIAM:

■ Appellants seek reversal of their convictions for grand larceny of auto tires, arguing that the trial court erred in failing to suppress two identifications of appellant Edgar Cunningham by the arresting officer. Appellants claim that the identification had a causal relationship to unlawful pre-arrest police conduct and thus should have been suppressed pursuant to the rationale set forth by this court in *Crews v. United States*, D.C.App., 389 A.2d 277 (1978) (en banc). Finding no error in the trial court's failure to suppress, we affirm.[1]

At approximately midnight on July 25, 1976, Metropolitan Police Department

1. Appellants raise two additional claims of error which merit merely brief discussion. Appellants argue that the evidence of value of the pilfered items was insufficient to prove grand larceny and hence that the trial court erred in failing to grant motions for judgments of acquittal or, in the alternative, in failing to give a petit larceny instruction. However, the record here reflects more than sufficient proof of value to justify submitting the case to the jury on the grand larceny charge, including testimony of the retail and wholesale costs as well as of the age and condition of the stolen items.

In addition, appellants claim they were deprived of their Sixth Amendment right to assistance of counsel by trial counsel's failure to present at trial photo evidence suppressed before trial. Such argument is wholly without merit.

(MPD) Officer Charles Cleveland responded to a radio broadcast indicating that two men were tampering with a white automobile in front of 810 Hamilton Street, N.W.[2] Upon arriving at the scene, he turned off the lights on his cruiser and proceeded down the street, which was well illuminated by street lamps. He observed two men in the process of removing tires from a white Thunderbird. As he approached, one of the men was rolling a tire to a brown Granada which was parked down the street. When that man dropped the tire, Officer Cleveland turned on his spotlight and observed the suspect for several seconds at a distance of approximately 20 feet. The man "sort of glared at [him]," then fled, with the officer giving chase on foot. After a brief unsuccessful pursuit, Officer Cleveland returned to the scene and arrested the other suspect. He then called for assistance and broadcasted a lookout for the fugitive, describing in detail his race, sex, age, height, weight, facial hair, complexion and clothing.

When MPD Detective James Tsakanikas responded to the call, the two police officers observed that all four tires had been removed from the Thunderbird. One was alongside the Granada, which admittedly belonged to appellant Anthony Cunningham, and two were in the back seat of the Granada. Looking for the fourth tire, and after removing the keys from the ignition, the police officers opened the trunk of the Granada and discovered the fourth tire, along with a number of personal items including a briefcase. On top or on the side of the briefcase, the officers found a packet of papers secured by a rubber band. Detective Tsakanikas looked through the papers; when he came upon a yellow photo I.D. card, Officer Cleveland spontaneously identified the picture as that of the man who had fled earlier.

The photo I.D. card belonged to appellant Edgar Cunningham, and contained his name and address. The officers unsuccessfully tried to locate Edgar Cunningham at the address listed on the I.D. card. Approximately two hours later, while Anthony Cunningham's arrest was still being processed by Officer Cleveland, Edgar Cunningham voluntarily appeared at the police station. He was seen by Cleveland from about 40 feet away, recognized, and arrested.

■ On April 20, 1977, a pre-trial hearing was held on Edgar Cunningham's motions to suppress tangible evidence, *i. e.*, the photo I.D. and two identifications—Officer Cleveland's police station identification and his proffered in-court identification. The trial court granted the motion to suppress the card, holding that its seizure was beyond the scope of the officers' authority to search, once the tire was found in the trunk.[3] However, the court ruled that Officer Cleveland's station house identification, as well as his proffered in-court identification, were not causally related to the illegal police conduct and thus suppression of the identifications was not justified. In a written opinion, the court said:

> Officer Cleveland's encounter with the defendant at the police station did not result from an exploitation of the illegal seizure of the photo-identification card, but resulted from the voluntary action of the defendant in appearing at the police station. The recognition of Edgar at the station resulted from the initial crime scene sighting. The Court concludes that the testimony of this second sighting should not be suppressed as the fruit of an unlawful search under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
>
> . . . From the evidence adduced at the hearing on these motions it is clear that Officer Cleveland had a good opportunity to observe Edgar Cunningham. The officer drove his cruiser parallel to Edgar as he was walking and from a distance of about twenty feet, focused his spotlight directly into the suspect's face. There were no obstructions between the

---

**2.** A resident of Hamilton Street had called the police to report the incident.

**3.** We have no occasion to consider the correctness of that ruling since the government did not appeal.

two men and Edgar looked directly at the officer for several seconds. Moreover, the area was well lighted by nearby street lamps and this eight-year police veteran, a trained observer, thereafter broadcasted a detailed and accurate description of Edgar Cunningham prior to the discovery of the photo-identification card in the Granada's trunk. The Court concludes that Officer Cleveland has an "independent source" for his in-court identification testimony and such testimony, if offered, will be admitted into evidence by the Court. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).[4]

In this court, appellants renew their argument that Officer Cleveland's identification of Edgar Cunningham should have been suppressed as the "fruit" of the illegal search of the Granada trunk and the illegal seizure of the photo I.D. This court has recently reviewed the extent to which the suppression remedy is appropriate when official misconduct interferes with a suspect's Fourth Amendment rights. In *Crews v. United States, supra,* we stated:

> The initial question in assessing the asserted "exploitation" is whether the unlawful police behavior had a causal relationship to obtainment of the contested identification testimony. Obviously, this evidence cannot be the product of exploitation if an official violation did not actually lead to or "cause" its acquisition. (Or, as expressed in *Wong Sun,* the evidence must have been "come at by" the exploitation. 371 U.S. at 488, 83 S.Ct. 407). If, in the words of *Silverthorne* [*Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920)], the courtroom identification arose instead from an "independent source," it cannot be tainted. [*Id.* at 289.]

> \*　　\*　　\*　　\*　　\*　　\*

The Fourth Amendment concern, however, is not reliability of evidence; it is deterrence of illegal searches and seizures by exclusion of unlawfully obtained evidence.

.　　　.　　　.　　　.　　　.

> By definition, all evidence that is the product of—*i. e.,* has been "come at by exploitation of"—the official misconduct has no "independent source"; it is dependent on, and thus derived from, the violation of Fourth Amendment rights itself. Thus, it must be excluded *no matter how reliable.* *Wong Sun v. United States, supra.* In summary, with regard to independent-source inquiry (but without regard to other possible exceptions to the exclusionary rule), the Fourth Amendment requires exclusion of all evidence, including identification testimony, that is directly traceable to—is causally related to—unlawful official behavior. [*Id.* at 289–290 (footnotes omitted; emphasis in original).]

Thus, in order for this court to determine whether the disputed identifications were correctly admitted into evidence, we must assess whether the search of the trunk and seizure of the photo I.D. "had a causal relationship to obtainment of the contested identification testimony." *Id.* at 289.

■ The evidence supports the trial court's finding of the absence of a causal relationship. Officer Cleveland viewed appellant Edgar Cunningham first under the bright street lamps for several minutes, and then with the aid of the spotlight of his cruiser for several additional seconds during which time appellant "glared" at the officer. These initial sightings enabled Officer Cleveland to be sufficiently familiar with the suspect to broadcast a detailed description following his unsuccessful pursuit. Only after these events did the officer participate in the search of the trunk and seizure therefrom of the I.D. card which the trial court held to be unlawful. Since the

---

4. Although the testimony of Officer Cleveland which was the basis for the foregoing findings was impeached by police reports written by him (in which he had stated the basis of the

station house identification to have been the photo on the I.D. card), the trial court, as it had a right to do, chose to credit his in-court testimony.

findings of the trial court are supported by the evidence, we cannot disturb them on appeal. D.C.Code 1973, § 17–305(a).[5]

*Affirmed.*

5. In *Crews*, we noted other examples of identifications "that [have] been *acquired wholly apart from* the illegal seizure. Such an independent source might include, for example, an identification of the accused by the same witness after a lawful arrest on another charge, or an identification by the same witness to a different team of detectives who had included a lawfully obtained picture of the accused in a standard photographic array." [*Id.* at 290 (emphasis in original).]